1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   ROBERT M. COLLINS, SB# 254915
2     E-Mail: Robert.Collins@lewisbrisbois.com
   JOSEPHINE A. BROSAS, SB# 239342
3     E-Mail: Josephine.Brosas@lewisbrisbois.com
   THOMAS S. KIDDE, SB# 61717
4     E-Mail: Thomas.Kidde@lewisbrisbois.com
   633 West 5th Street, Suite 4000
5  Los Angeles, California 90071
   Telephone: 213.250.1800
6  Facsimile: 213.250.7900

7  Attorneys for Plaintiff LURLINE BAY, LLC

9              UNITED STATES DISTRICT COURT
10          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LURLINE BAY, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>HARBOR CLASSIC, LLC, a Limited Liability Company, and DOES 1 - 10, inclusive,<br><br>Defendants. | Case No.<br>**COMPLAINT FOR:**<br><br>**(1) INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARK (15 U.S.C. § 1051, ET. SEQ);**<br><br>**(2) FALSE ADVERTISING AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125 (A)(1)(B))**<br><br>**(3) FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125 (A)(1)(A));**<br><br>**(4) UNFAIR COMPETITION AND UNFAIR PRACTICES (CALIFORNIA BUSINESS AND PROFESSIONS CODE §§17200 et. seq.)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff LURLINE BAY, LLC ("Harbour") complains of Defendant Harbor Classic LLC as follows:

94551896.1

1

COMPLAINT

## JURISDICTION AND PARTIES

1. Harbour is, and at all times herein mentioned was, a limited liability company organized and existing under the laws of the State of California and doing business at 3240 Helms Avenue, Los Angeles, California 90034 in the Central District of California.

2. Harbour is informed and believes, and on that ground alleges, that Defendant Harbor Classic, LLC ("HC") is a South Carolina limited liability company with a business address at 2720 Midland Park Road, Building A, North Charleston, South Carolina 29406 and is doing business within this District. Harbour is informed and believes, and on that ground alleges, that HC markets and sells its products throughout the United States, including California and in this District.

3. This is a civil action arising under the United States Trademark Act of 1946, as amended, 15 U.S.C. §1051, et seq. (hereinafter "Lanham Act"), for infringement of a federally registered trademark; false representation, description, designation of origin; unfair competition; and unfair competition laws of the state of California. *(California Business and Professions Code* §§ 17200 et seq.).

4. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1331 and 1338 as it involves claims arising under the Lanham Act and substantially related claims for unfair competition. The Court further has jurisdiction under 28 U.S.C. §1332 and has supplemental jurisdiction of this action pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over HC in that HC has and continues to conduct business in this District through the marketing and sale of products using terms that cause consumer confusion and that infringe upon the trademarks of Harbour. HC states on its website that it ships its products to "all 48 contiguous United States."

6. Venue for this action is proper in the Central District of California

1  pursuant to 28 U.S.C. § 1391(b) as the District in which a substantial part of the
2  events giving rise to the claim occurred.
3      7. Harbour is currently unaware of the true names and capacities of the
4  Defendants named herein as Does 1-10, inclusive, and Harbour therefore sues said
5  Defendants by those fictitious names. Harbour will request leave of this Court to
6  amend this complaint to state their true names and capacities when it ascertains the
7  same. Harbour is informed and believes, and on that ground alleges, that each such
8  fictitiously named Defendant is in some manner responsible for the acts alleged
9  herein and that such Defendants proximately caused the injuries alleged herein.

## GENERAL ALLEGATIONS

11      8. Harbour designs, manufactures and sells a variety of home furnishings
12  including, but not limited to, furniture, furnishing accessories and lighting. Harbour
13  does business as "Harbour" and markets all of its products using the "HARBOUR"
14  mark. Its website is found at https://shopharbour.com and since its inception
15  HARBOUR is the name that the consuming public sees and identifies as the source
16  of its products.
17      9. Harbour is the owner of the trademark HARBOUR, U.S. Registration
18  No. 6,158,590 dated September 22, 2020, for floor lamps, indoor furniture, outdoor
19  furniture, and beverage glassware, ceramic sculptures, vases, vessels, bowls, plates,
20  and pots. Harbour first used its mark on the respective goods in 2009. A copy of
21  such registration is attached hereto as Exhibit "A" and incorporated herein by
22  reference. The mark is owned by Harbour and is valid and subsisting and is in full
23  force and effect.
24      10. Harbour is also the owner, by assignment, of the trademark
25  HARBOUR OUTDOOR, U.S. Registration No. 4,257,268 dated December 11,
26  2012, for furniture and outdoor furniture, namely stools, tables, chairs, benches, sun
27  lounges, lounges, sofas. This mark was assigned to Harbour by Harbour's sister
28  company, Oz Iron Pty Ltd which first used the mark in 2008. The HARBOUR

94551896.1

3

COMPLAINT

OUTDOOR registration is incontestable and a copy of the registration is attached as Exhibit "B" along with the assignment thereof.  The mark is owned by Harbour and is valid and subsisting and in full force and effect.  Harbour's registrations are collectively referred to herein as the "HARBOUR Marks".

11. Harbour is also the owner of pending trademark applications with the United States Patent and Trademark Office for HARBOUR HOUSE for hotel accommodation services, Serial No. 97/397,718 filed on May 6, 2022, and THE HARBOUR CLUB, for buying club services in the field of furniture and retail store services featuring, Serial No. 92/793,308 filed on February 13, 2023.

12. Harbour has developed the HARBOUR Marks at great expense in advertising to promote its goods and services.  All of the trademarks are valuable and irreplaceable assets of Harbour.

13. As a result of the foregoing, the HARBOUR Marks have become recognized and relied upon in the trade and by consumers as identifying Harbour's goods and services.  The HARBOUR Marks are known throughout the United States as clients of Harbour are from states besides California, and it is also known internationally with its products known in eighty countries.  Harbour's trademarks have come to represent an extremely valuable business asset as a symbol of the high-quality goods and services dispensed by Harbour. Said trademarks and the business assets represented therein belong exclusively to Harbour.

14. Harbour has a vital economic interest in protecting the HARBOUR Marks and the preservation and protection thereof is essential to the maintenance of the HARBOUR Marks, and the goodwill and the reputation associated therewith.

15. Harbour is informed and believes, and on that basis alleges, that in or about early 2022 HC commenced business and offered outdoor furniture products on the Internet with a website at https://www.harborclassic.com . As part of its website, HC offers various "harbor" collections, including "Charleston Harbor", "Savannah Harbor", "Nantucket Harbor", "Seward Harbor", "Newport Harbor",

"Port Angeles Harbor", "Freeport Harbor" and "Montauk Harbor". (Screenshot from HC website, Exhibit C hereto).

16. In addition to the use of a phonetically identical name to Harbour's HARBOUR Marks, HC's website utilizes a similar format to that used by Harbour for the display of the furniture it offers. (Exhibit D hereto shows screenshots from HC's websites and those from Harbour's website).

17. In addition to the foregoing, Harbour has discovered and/or has been advised of multiple instances of actual confusion both by consumers as well as companies in the industry including confusion arising from a Google® search of Harbour's website "shop harbour" that includes as the first "sponsored" result HC's website https://www.harborclassic.com and even misleadingly identifies the site as "Shopharbour.com", which is Harbour's website. (*See*, Exhibit E).

18. Harbour has also received inquiries from consumers who have mistakenly contacted it thinking that it was HC. By way of example, Exhibit F attached hereto is an inquiry from a consumer seeking furniture items that, when he sends the links, turns out to be for HC products and not Harbour. (*See*, Exhibit F). An additional example includes a customer who reached out to HC rather than Harbour about an issue with a table purchased from Harbour wherein HC, in advising that it was not their product, went further and disparaged Harbour by calling it a "Tier B" outdoor brand thereby damaging Harbour's reputation. (*See*, Exhibit G).

19. Equally disturbing is the confusion in the industry itself. For example, Harbour received a quote request from Meyer Davis, an interior design studio in New York, and even a customer of Harbour for over ten (10) years, for multiple items which, as it turns out, are all from the "collections" of HC although Meyer Davis identifies same as manufactured by Harbour Outdoor and even uses its website address www.shopharbour.com. (*See* Exhibit H). A similar occurrence is shown in Exhibit I wherein Greig Good Studio, a hospitality design studio in Hermosa Beach, California erroneously inquires of Harbour as to a "Seward" armchair, which is

1  actually from the HC collection – "Seward Harbor". (*See* Exhibit I).

2  20. Still further actual confusion is set forth in Exhibit J which reveals a contact on LinkedIn directed to Harbour's Executive Vice President of Sales asking for a response to an email the sender sent to trade@harborclassic.com (*i.e.*, HC) regarding the "distribution of Harbor Classic products." (*See*, Exhibit J).  A similar inquiry came from a customer in Ketchum, Idaho, who sent a screenshot from HC's website asking Harbour for pricing and delivery time. (*See*, Exhibit K).

3  21. Recently, HC has added to references to "Harbor Outdoor" to its website that clearly relate to and infringe Harbour's HARBOUR OUTDOOR mark. (Exhibit L).  In fact, the table item identified by this reference is very similar to the teak table manufactured and sold by Harbour under its' "Hayman" model (Exhibit L).  The foregoing demonstrates that HC's use of "Harbor" will and has caused actual consumer confusion, as it creates confusion as to the source and affiliation of HC's products and causes consumers to wrongly believe that HC's products are from Harbour.

4  22. HC's use of "Harbor" as its tradename and in connection with its various collections is confusingly similar to the HARBOUR Marks and is likely to diminish the value of its marks and the goodwill associated therewith.  Moreover, Harbour is forced to increase its advertising budget to address HC's online advertising and apparent bidding on Google® AdWords® using "harbor".

## FIRST CLAIM FOR RELIEF
## (All Defendants)
## Infringement of Federally Registered
## Trademark(15 U.S.C. §1051, et seq.)

23. Harbour incorporates herein by this reference each and every allegation contained in paragraphs 1 – 22 inclusive, as though fully set forth herein.

24.  HC is using in commerce the term "Harbor" in connection with the sale, offering for sale, distribution, and advertising of its furniture products and such

is likely to cause confusion or to cause mistake or to deceive consumers as to the source of said products, and/or into believing an affiliation exists between HC's "Harbor" branded products and the "Harbour" branded products, and is thus infringing the HARBOUR Marks.

25. By reason of HC's actions, Harbour has suffered irreparable harm to its valuable trademark rights and the goodwill associated therewith. Harbour has been, and unless HC is preliminary and permanently restrained from its actions, will continue to be irreparably harmed. Harbour has no adequate remedy at law and therefore seeks injunctive relief under 15 U.S.C. §1116.

26. As a direct and proximate result of HC's conduct, Harbour has been damaged and will continue to suffer damages by such infringement in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
## (All Defendants)
## False Advertising and False Designation of Origin
## (15 U.S.C. §1125(a)(1)(B))

27. Harbour incorporates herein by this reference each and every allegation contained therein paragraphs 1 – 26, inclusive, as though fully set forth herein.

28. The actions of HC constitute false representations and false designations of origin and are likely to confuse the public and to lead the public to erroneously believe that HC's goods are affiliated with Harbour and will divert consumers to HC.

29. Harbour is informed and believes, and on that ground alleges, that HC adopted and used "Harbor" with full knowledge of the existence of the HARBOUR Marks and knew that the use and exploitation of the term "Harbor" in connection with their similar products would cause confusion in the marketplace, and that such adoption and use would damage Harbour.

30. HC's acts alleged herein constitute false advertising and false

designation of origin in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

31. By reason of HC's actions, Harbour has suffered irreparable harm to their reputation and will continue to be irreparably harmed unless HC is preliminarily and permanently restrained from using "Harbor".

32. As a direct and proximate result of HC's conduct, Harbour has suffered and will continue to suffer damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
## (All Defendants)
## Federal Unfair Competition
## (15 U.S.C. §1125(a)(1)(A))

33. Harbour incorporates herein by this reference each and every allegation contained therein paragraphs 1 – 32, inclusive, as though fully set forth herein.

34. HC's unauthorized use of confusingly similar variations of the HARBOUR Marks in its advertising, marketing, sales, and services as alleged herein will cause confusion, cause mistake, and/or deceive consumers as to the source, origin, affiliation, connection, or association of HC's goods and is likely to cause consumers to mistakenly believe that HC's goods are somehow affiliated with Harbour.

35. HC's acts as alleged herein constitute infringement and unfair competition in violation of Section 43(a)(l)(A) of the Lanham Act, 15 U.S.C. §1125(a)(l)(A).

36. By reason of HC's actions, Harbour has suffered irreparable harm to its valuable trademarks and the goodwill associated therewith. Harbour has been and will continue to be irreparably harmed unless HC is preliminarily and permanently enjoined.

37. As a direct and proximate result of HC's actions, Harbour has suffered damages and will continue to suffer damages in an amount to be proven at trial.

# FOURTH CLAIM FOR RELIEF

## (All Defendants)

## Unfair Competition in Violation of California Law

## (Cal. Bus. & Prof. Code Section 17200, *et seq.*)

38. Harbour incorporates herein by this reference each and every allegation contained therein paragraphs 1 – 37, inclusive, as though fully set forth herein.

39. The acts averred above constitute unfair competition and such acts are unlawful, unfair, or fraudulent business practices and are unfair, deceptive, untrue, or misleading advertising and promotion that is prohibited by Section 17200, *et seq.*, including §17500, of the *California Business and Professions Code*.

40. Harbour has no adequate remedy at law and is presently suffering irreparable injury by and through the above averred conduct of HC.

41. The acts of unfair competition will be ongoing unless enjoined by this Court and unless the Court makes such orders as are necessary to prevent HC from any act which constitutes unfair competition, or as may be necessary to restore to Harbour any money which may have been acquired by HC by means of such unfair competition of HC.

**WHEREFORE** HARBOUR prays for judgment in its favor and against HC as follows:

(a) That HC, by its usage of "Harbor", be adjudged to have infringed the HARBOUR Marks, U.S. Registration Nos. 4,257,268 and 6,158,590 and to have infringed Harbour's rights in these marks under 15 U.S.C. §1057, *et seq*.

(b) That HC by its use of the term "Harbor", in connection with its goods and services committed the act of false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

(c) That HC by its use of the term "Harbor", has committed the act of unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

(d) That the acts of HC constitute unfair competition in violation of *California Business and Professions Code §17200, et seq.*

(e) That HC, its officers, agents, servants, employees, divisions, attorneys, representatives, and all other persons acting in concert or participation with HC or on its behalf, be enjoined and restrained, during the pendency of this action and permanently thereafter from:

    (1) using or displaying the term "Harbor" in connection with its goods and services, and immediately cease all use of the term "Harbor" as displayed in HC's website, various social media sites (such as on its Instagram and Facebook pages), and in connection with the goods provided or identified therein.

    (2) performing any act, making any statement, or distributing any materials that are likely to lead members of the public to believe that goods sold by HC are associated or connected with Harbour, or are licensed, sponsored, approved, or authorized by Harbour.

    (3) otherwise taking any action likely to cause public confusion, mistake, or deception as to the connection, affiliation, sponsorship, approval, or other association of HC's goods and services with those of Harbour.

(f) For an accounting determining the damages that Harbour has suffered and the profits that HC has made by reason of its infringement, false advertising, false designation of origin and unfair competition and for an award of HC's profits and Harbour's damages as determined by the accounting and that the amount be tripled pursuant to 15 U.S.C. §1117.

(g) For Harbour's costs of suit herein.

(h) For an award of Harbour's attorneys' fees for violation of the Lanham Act, or as otherwise allowed by law or equity; and

/ / /

/ / /

(i) For such other relief as the Court may deem just and proper.

DATED: July 13, 2023

ROBERT M. COLLINS
JOSEPHINE A. BROSAS
THOMAS S. KIDDÉ
LEWIS BRISBOIS BISGAARD & SMITH LLP

By:     */s/ Robert M. Collins*
ROBERT M. COLLINS
Attorneys for Plaintiff LURLINE BAY, LLC

94551896.1

**11**

COMPLAINT

## DEMAND FOR JURY TRIAL

Harbour hereby demands a trial by jury on all issues so triable in this action.

DATED: July 13, 2023

ROBERT M. COLLINS
JOSEPHINE A. BROSAS
THOMAS S. KIDDÉ
LEWIS BRISBOIS BISGAARD & SMITH LLP


By:     */s/ Robert M. Collins*
ROBERT M. COLLINS
Attorneys for Plaintiff LURLINE BAY, LLC